## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Case No. 06-10166(PJW) |
| | : | (Jointly Administered) |
| WORLD HEALTH | : | |
| ALTERNATIVES, INC., *et al.*, | : | Chapter 7 |
| | : | |
| Debtors. | : | |
| _____ | : | |
| GEORGE L. MILLER, | : | |
| Chapter 7 Trustee for WORLD HEALTH | : | |
| ALTERNATIVES, INC., *et al.* | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adversary No. 07-51350(PJW) |
| | : | |
| RICHARD E. MCDONALD, MARC | : | |
| ROUP, JOHN C. SERCU, BRUCE | : | |
| HAYDEN, FREDERICK R. JACKSON, SR., | : | |
| JOHN W. HIGBEE, BRIAN T. LICASTRO, | : | |
| MARC B. RINDER and nominal defendant | : | |
| BERGER & MONTAGUE, P.C. in its capacity | : | |
| as escrow agent of a settlement fund, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | **Re Dkt. No. 775** |

## MEMORANDUM OPINION

This is the Court's decision on the Motion of George L. Miller, as Chapter 7 Trustee of the Estate of World Health Alternatives, Inc. for Preliminary Injunction and to Enforce Automatic Stay ("the Motion") [D.I. 775]. The Chapter 7 Trustee, George L. Miller ("the Trustee") requests that the Court enjoin the prosecution and approval of a settlement agreement in a securities litigation pending elsewhere, and direct the transfer to the Trustee

of the proceeds of a corporate liability insurance policy intended to fund the settlement agreement. The Motion is necessitated by the fact that the settlement will exhaust the insurance proceeds leaving no proceeds for litigation which the Trustee commenced in this Court on behalf of creditors.  After carefully considering the parties' briefs and arguments, the Court will deny the Motion for preliminary injunction.

## FINDINGS OF KEY FACTS[1]

The following facts are undisputed:

1.      World Health Alternatives, Inc. ("World Health") was a public company in the business of providing temporary healthcare staffing to hospitals and other healthcare facilities.

2.      In July 2005, Debtor purchased and was issued XL Specialty Insurance Company Management Liability and Company Reimbursement Policy No. ELU0895-4-05 ("the Policy') for the period July 18, 2005, through July 18, 2006.

3.      In August 2005, there were reports of possible irregularities by management which led to the filing of a series of class action suits alleging violations of the securities laws ("the Class Actions").  The Class Actions were filed in the United States District Court for the Western District of Pennsylvania ("the District Court").

4.      On October 19, 2005, a shareholder filed a derivative action on behalf of World Health ("the Derivative Action").

---

[1]  At the hearing, the parties submitted a Joint Stipulation of Facts upon which the Court bases its findings.

5.      On October 24, 2005, the District Court consolidated the Class Actions and Derivative Action ("the Consolidated Action") and thereafter, on April 21, 2006,  the plaintiffs filed a consolidated and amended complaint ("the Amended Complaint") which did not include the claims asserted in the Derivative Action and did not name World Health as a defendant.

6.      World Health filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on February 20, 2006, in this Court.  Thereafter, on October 31, 2006, the bankruptcy case was converted to Chapter 7 and on November 1, 2006, the Court appointed the Trustee for the bankruptcy estate.

7.      On or about July 18, 2006, the Policy lapsed and World Health did not renew it.

8.      On August 31, 2006, the parties reached agreement to settle the Consolidated Action.  The plaintiffs in the Consolidated Action filed a settlement agreement ("the Settlement") with the Court on November 27, 2006.

9.      On December 20, 2006, the Trustee filed a motion to intervene in the Consolidated Action which the District Court denied on January 31, 2007.  The District Court also on January 31, 2007, ordered distribution of a notice of settlement and set a final hearing on the Settlement for June 11, 2007 ("the Settlement Hearing").

10.      On May 21, 2007, the Trustee initiated this adversary proceeding by filing a complaint against World Health's directors and officers ("the Trustee's Action") alleging

3

breaches of fiduciary duty, unjust enrichment, reimbursement of compensation, self-dealing and fraudulent transfer, and filed the Motion.

11.    On June 5, 2007, the Trustee filed a Notice of Removal of the Derivative Action from the District Court to the United States Bankruptcy Court for the Western District of Pennsylvania.

## THE SETTLEMENT AGREEMENT

The Settlement which the District Court is scheduled to consider at the Settlement Hearing provides for the payment of $1.7 million from the Policy ("the Insurance Proceeds"), an additional $1 million from an individual defendant, and stock from a second individual defendant ("the Settlement Proceeds").  The Settlement Proceeds have been tendered to Berger & Montague, lead counsel in the Consolidated Action ("Lead Counsel"), as escrow agent.  Lead Counsel is a named defendant in the Trustee's Action.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b) as a proceeding arising under or related to a case under Title 11 of the United States Code.  Venue is properly in the District of Delaware pursuant to 28 U.S.C. § 1409(a).

## DECISION

### A.  Standards for a Preliminary Injunction

The standards for issuance of a preliminary injunction are clearly established in this Circuit.  The requirements are: a reasonable probability of success on the merits, irreparable

harm in the absence of relief, analysis of the harm to the non-moving party, and the determination of what is in the public interest. *U.S. v. Bell*, 414 F.3d, 474, 478, n.4 (3d Cir. 2005).

### B. <u>Issues Presented</u>

The Trustee frames the issue succinctly and accurately: "[W]hether a debtor's creditors have priority over the debtor's shareholders in the proceeds of an insurance policy to which both claim entitlement." (Adv. Dkt. #17, p.2.) The answer is not nearly as simple as the question and requires an analysis of the Policy and an effort to reconcile differing rulings by other courts. As the parties have requested an expedited resolution of this issue before the Settlement Hearing, the Court will not fully address the many decisions which have dealt with the issue.

### C. <u>The Policy</u>

The Policy is designed primarily to provide insurance coverage to World Health's directors and officers for defense costs, settlements and judgments incurred in suits against the directors and officers alleging wrongful acts committed by them while acting in their capacity as directors and officers of the company. The Policy has a $5 million policy limit on its face, but also contains a "Higher Limit Warranty Agreement" which limits coverage to $2 million under certain circumstances. The parties and the Court are working from the assumption that only $2 million of coverage is available.

The Policy provides three types of insurance coverage: <u>Coverage A</u> insures the World

Health directors and officers against any damages (in the form of a settlement or a judgment) and litigation defense costs that they are legally obligated to pay in connection with certain claims made against them in their capacity as directors and officers; Coverage B provides for reimbursement of World Health to the extent it indemnifies its directors and officers for any such damages; and Coverage C insures World Health for certain securities claims made directly against it.    The Policy also contains a "Priority of Payments" endorsement (Endorsement No. 11) that specifically provides for payment of damages and defense costs to the directors and officers under Coverage A before any payment is made to World Health under Coverages B and/or C.    In addition, the Policy does not provide any insurance coverage unless and until a covered "Loss" has occurred, *i.e.*, until an insured person is obligated to pay defense costs or damages in connection with a covered claim.

The Policy is a "wasting" policy.    It insures directors and officers for the defense costs they incur but payment of those costs erodes the policy's limits.    Defense costs paid to defend the directors and officers diminish the limits of the policy proceeds that may otherwise be available to satisfy any settlements or judgments against the directors and officers.

The Policy also is a "claims made" policy which only provides insurance coverage for certain claims made against the directors and officers during the policy period of July 18, 2005 through July 18, 2006.    The Policy also contains an "Insured v. Insured Exclusion" endorsement (Endorsement No. 4) which replaces the standard insured v. insured exclusion found in the policy form.    It excludes from coverage any action brought on behalf of World

Health against the directors and officers.

**D.  Ruling**

**Reasonable Probability of Success on the Merits**

The threshold issue in determining whether there is a reasonable probability that the Trustee will win on the merits of his claim of priority to the proceeds of the Policy is whether the proceeds are property of the estate.  It is clear that insurance policies purchased and paid for by a debtor are property of the estate.  *See, e.g.*, *AC and S, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252 (3d Cir. 2006), *cert. denied*, 126 S. Ct. 2291, 164 L. Ed. 2d 819 (2006); *Estate of Lellock v. Prudential Ins. Co. of Am.*, 811 F.2d 186, 189 (3d. Cir. 1987).  The more important question here is whether the proceeds of the policy are property of the estate.

The decision the Court finds most instructive[2] is *In re Allied Digital Technologies Corp.*, 306 B.R. 505 (Bankr. D. Del. 2004), a case from this Court in which the precise issue was whether the proceeds from a liability insurance policy were property of the Chapter 7 estate.  In *Allied Digital*, the insurance issue arose in a suit brought by the trustee against directors and officers.  It did not involve the settlement of a separate litigation.  The Court concluded that because the policy provided direct coverage to directors and officers for claims and defense costs, and indemnification coverage to the debtor for amounts paid to

---

[2]  The parties also discuss a decision from our District Court reversing this Court's issuance of an injunction against shareholder litigation.  In *In Re Reliance Acceptance Group, Inc.*, 235 B.R. 548 (D.Del. 1999), the District Court allowed a shareholder suit in its early stage to proceed after this Court had enjoined it.  The District Court held that the debtors' estate did not take precedence over the shareholder claims.  *Reliance* is of little significance here because it did not deal with insurance or settlement issues.

7

directors and officers, the proceeds were not property of the bankruptcy estate.  The Court

noted that as here, both the trustee and the individual defendants sought payment from the

same wasting liability policy.  The Court concluded:

> Generally, when insurance policies provide direct coverage to
> directors and officers, the proceeds of the insurance policy are
> not property of the bankruptcy estate because the proceeds are
> payable to the directors and officers not the estate.
>
> \*    \*    \*    \*
>
> In addition, when a liability insurance policy provides direct
> coverage to a debtor the proceeds of the policy are property of
> the bankruptcy estate.

*Id.* at 510-11.

The Court continued in its discussion, summarizing the law which is applicable here

so clearly and precisely that it deserves quotation at length:

> The Court concludes that when a debtor's liability insurance
> policy provides direct coverage to the debtor the proceeds are
> property of the estate, because the proceeds are payable to the
> debtor.  Further when the liability insurance policy only provides
> direct coverage to the directors and officers the proceeds are not
> property of the estate.  However, when there is coverage for the
> directors and officers and the debtor, the proceeds will be
> property of the estate if depletion of the proceeds would have an
> adverse effect on the estate to the extent the policy actually
> protects the estate's other assets from diminution.  Lastly, when
> the liability policy provides the debtor with indemnification
> coverage but indemnification either has not occurred, is
> hypothetical, or speculative, the proceeds are not property of the
> bankruptcy estate.  That is the situation here.

*Id.* at 512.

8

The parties have cited numerous cases addressing whether the insurance proceeds are property of the bankruptcy estate, and in the limited time available, the Court cannot discuss all or even most of them. However, the cases do define certain principles.

When an insurance policy provides coverage only to the debtor, courts will generally rule that the proceeds are property of the estate. *Id.* On the other hand, when a policy provides coverage only to directors and officers, courts will generally rule that the proceeds are not property of the estate. *Id.*; *See also In re La. World Exposition, Inc. v. Fed. Ins. Co.*, *(In re La. World Exposition, Inc.)* 832 F.2d 1391, 1399 (5th Cir. 1987) (finding that the debtor has no ownership interest in proceeds of an insurance policy where the obligation of the insurance company is only to the directors and officers); *In re Daisy Sys. Sec. Litig.*, 132 B.R. 752, 755 (N.D. Cal. 1991) (holding that when a D&O insurance policy only provides direct coverage to the directors and officers the proceeds are not property of the estate).

However, this issue becomes more complicated when a policy provides coverage to the debtor and to the directors and officers. When a policy covers the debtor and its directors and officers, and there is risk that payment of proceeds to the directors and officers will result in insufficient coverage of the debtor, then the proceeds are property of the estate and any attempts to obtain the proceeds are prohibited under the automatic stay. *Allied Digital*, 306 B.R. at 511. This is true because "[a] debtor's interest in the proceeds . . . overrides the interest of the directors and officers." *Id.* On this basis, some courts have found that when an insurance policy covers directors and officers for liability and covers the debtor for

9

obligations to indemnify liable directors or officers, the proceeds of the policy are property of the estate. *In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 420 (Bankr. E.D. Pa. 1995) ("Proceeds available for the Debtor's liability exposure are not segregated from the proceeds available to the directors and officers.  Thus, the Debtor is indeed an insured and has a sufficient interest in the Proceeds as a whole to bring them into the estate."); *Aetna Casualty & Surety Co. v. Jasmine, Ltd. (In re Jasmine, Ltd.*), 258 B.R. 119, 128 (D.N.J. 1999) (finding that the debtor's interest in indemnification proceeds of its insurance policy was enough to make the entire policy part of the bankruptcy estate).

Other courts, however, have found that insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification "either has not occurred, is hypothetical, or speculative."  *Allied Digital*, 306 B.R. at 512; *Adelphia Communs. Corp. v. Associated Elec. & Gas Ins. Servs., Ltd. (In re Adelphia Communs. Corp.)*, 302 B.R. 439, 448 (Bankr. S.D.N.Y. 2003) (holding that indemnification coverage for the debtors did not make insurance policy proceeds property of the estate because it was not shown that any of the debtors made payments for which it would be entitled to indemnification coverage, such payments were not contemplated, and the debtors had not committed themselves to payments using their coverage).  Citing a different rationale, some courts have found that insurance policy proceeds are not property of the estate because whether the proceeds go to the directors and officers directly or indirectly (through indemnification), the polices still exist solely for the protection of directors and officers.  *In*

10

*re La. World Exposition, Inc.*, 832 F.2d at 1399 (finding that insurance policy proceeds that covered the debtor's indemnification obligations were not property of the estate because they only benefited the directors and officers); *Youngstown Osteopathic Hosp. Ass'n v. Ventresco (In re Youngstown Osteopathic Hosp. Ass'n)*, 271 B.R. 544, 550 (Bankr. D. Ohio 2002) (finding that insurance policy proceeds were not property of the estate because "'D & O policies are obtained for the protection of individual directors and officers. Indemnification coverage does not change this fundamental purpose.'" (quoting *Ochs v. Lipson ( In re First Cen. Fin. Corp.*), 238 B.R. 9, 13 (Bankr. E.D.N.Y. 1999))).

Applying the rulings in the cases cited above to the case at hand, it appears that the proceeds of the Debtor's insurance policy are not property of the estate. The Court arrives at this conclusion from its review of the "language and scope of the [P]olicy at issue." *Allied Digital*, 306 B.R. at 509. The Policy proceeds which are being used to fund the Settlement and are being held in escrow by Lead Counsel are from the Policy's <u>Coverage A.</u> World Health, and now the Trustee as successor, has no right to any <u>Coverage A</u> proceeds, which insures only World Health's officers and directors. World Health must look to <u>Coverage B</u> which insures it for indemnification claims. There are no such claims against World Health. If the Trustee is seeking to recover for the wrongs of the defendants in the Trustee's Action pending in this Court, it is not entitled to preference over the settlement of the Consolidated Action. As the Court held in *Allied Digital*:

11

> The Trustee's real concern is that payment of defense costs may affect his rights as a plaintiff seeking to recover from The D&O Policy rather than as a potential defendant seeking to be protected by the D&O Policy.  In this way, Trustee is no different than any third party plaintiff suing defendants covered by a wasting Policy.

*Id.* at 512.

The Trustee faces many other impediments to recovering from the Policy.  These include the "Insured v. Insured Exclusion" in the Policy (Endorsement No. 4), the failure of the Trustee to bring a claim before the Policy lapsed[3], and the "Priority of Payments" under the Policy (Endorsement No. 11) which requires that payments first be made to <u>Coverage A</u> insureds.

The Court therefore finds that there is not a reasonable probability that the Trustee will succeed on the merits of his claim that the proceeds of the Policy are property of the estate or that he has priority or even a co-equal interest in the portion of the Policy which is funding the Settlement.  Accordingly, the Trustee has not satisfied the first and most significant substantive requirement for a preliminary injunction to issue which would enjoin the prosecution of the Settlement. The Court therefore need not address the remaining factors for an injunction.

---

[3]  The Trustee is attempting to circumvent the failure to assert a timely claim by using the Derivative Action which did bring a timely claim on behalf of World Health.  The Derivative Action was closed when Lead Counsel filed the Amended Complaint in the Consolidated Action.  The Court does not have before it the validity of the Trustee's efforts to utilize the Derivative Action, but it does represent yet another hurdle to the Trustee's interest in the Policy.

## <u>CONCLUSION</u>

Based on the foregoing, the Court denies the Trustee's motion for the issuance of a

preliminary injunction.  An Order consistent with the Opinion will issue.

Dated: June 8, 2007

KEVIN GROSS, U.S.B.J.