# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
|  | : | Chapter 7 |
| WORLD HEALTH ALTERNATIVES, | : |  |
| INC., *et al.*[1] | : | Case No. 06-10166 (PJW) |
|  | : | Jointly Administered |
|  | : |  |
| Debtors. | : |  |
|  | : |  |
| GEORGE L. MILLER, Chapter 7 | : |  |
| Trustee for WORLD HEALTH | : |  |
| ALTERNATIVES, INC., *et al.* | : |  |
|  | : | Adv. No. 07-51350 (PJW) |
| Plaintiff, | : |  |
| v. | : |  |
|  | : |  |
| RICHARD E. MCDONALD, MARC | : |  |
| ROUP, JOHN C. SERCU, BRUCE | : |  |
| HAYDEN, FREDERICK R. JACKSON, | : |  |
| SR., JOHN W. HIGBEE, BRIAN T. | : |  |
| LICASTRO, MARK B. RINDER | : |  |
| and DEANA J. SERUGA | : |  |
|  | : |  |
| Defendants. | : |  |

## ANSWERING BRIEF OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE, IN OPPOSITION TO BRIAN T. LICASTRO'S MOTION TO DISMISS

Francis G.X. Pileggi (Bar No. 2624)
Sheldon K. Rennie (Bar No. 3772)
Carl D. Neff (Bar No. 4895)
FOX ROTHSCHILD LLP
919 N. Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 655-3667/Fax: (302) 656-8920

-and-

---

[1] In addition to World Health Alternatives, Inc., a Florida corporation, the following entities are debtors in possession in these jointly administered bankruptcy cases: World Health Staffing, Inc., a California corporation, World Health Staffing, Inc., a Delaware corporation f/k/a MedTech Medical Staffing of Orlando, Inc., Better Solutions, Inc., JC Nationwide, Inc. f/k/a Medtech Staffing of Boca Raton, Inc. d/b/a JC Nationwide, MedTech Medical Staffing of New England, Inc. and MedTech Franchising, Inc.

Edward J. DiDonato, Esquire
2000 Market Street, Tenth Floor
Philadelphia, PA  19103
Tel: (215) 299-2000/Fax: (215) 299-2150
*Attorneys for Trustee, George L. Miller*

Dated: December 26, 2007

WM1A 214767v5 12/26/07

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS .......................................................1

SUMMARY OF ARGUMENT ...........................................................................2

STATEMENT OF ISSUES PRESENTED.............................................................3

STATEMENT OF FACTS ..................................................................................4

ARGUMENT ...................................................................................................9

    I.      Legal Standard .................................................................9

    II.     The Amended Complaint Adequately Pleads Claims for  Breach of Fiduciary Duty...........................................................11

    III.    The Amended Complaint Properly Pleads A Claim Against Ted Licastro For Waste Of Corporate Assets ......................................18

    IV.    The Amended Complaint Adequately Pleads Claims For Aiding and Abetting Set Forth in Counts III, IV and VII .........................22

            A.     Aiding and Abetting Breach of Fiduciary Duty .................................................................22

            B.     Aiding and Abetting Waste of Corporate Assets ..............................................................23

            C.     Aiding and Abetting Fraud ................................................24

    V.      The Amended Complaint Adequately Pleads Claims for Negligent Misrepresentation...........................................................26

    VI.    The Amended Complaint Adequately Pleads Claims For Fraudulent Transfer .........................................27

    VIII.   The Trustee's Professional Negligence Claim Against Licastro Should not be Dismissed.......................................................30

CONCLUSION...............................................................................................35

## TABLE OF AUTHORITIES

Page

*ATR-Kim Eng. Fin. Corp. v. Araneta,* No. 489-N, 2006 WL 3783520
  (Del. Ch., Dec. 21, 2006 ) .......................................................................13, 15, 16

*BCCI Holdings (Luxemburg) S.A. v. Clifford,* 964 F. Supp. 468
  (D.D.C. 1997) .........................................................................................................33

*Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) ...................................................19

*Brown v. Peoples Security Ins.*, 158 F.R.D. 350, 352 (E.D. Pa. 1994) (citing
  *Schaedler v. Reading Eagle Publication Inc.*, 370 F.2d 795, 798
  (3d Cir. 1967)) .........................................................................................................9

*City of Philadelphia v. Lead Industries Ass'n, Inc.*, 994 F.2d 112, 118
  (3d Cir. 1993) .....................................................................................................10, 18

*Cohen v. Hattaway,* 595 So.2d 105, 107 (Fla. 5th DCA 1992) ............................11

*Connolly v. Agostino's Rest.,* 775 So.2d 387, 388 n.1 (Fla. Dist. Ct. App. 2000)
  (citing *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1459 n.22 (11th Cir. 1989)) .......11

*Desimone v. Barrows*, 924 A.2d 908, 936 (Del. Ch. 2007) ...................................14

*Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744
  (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994),
  *remanded for trial*, 61 F.3d 17 (9th Cir. 1995) ...................................................33

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ...............................................14

*Huber v. Taylor*, 469 F.3d 67, 81 (3d Cir. 2006) ...................................................32

*In re Am. Bus. Fin. Serv., Inc.*, 361 B.R. 747, 753-54 (Bankr. D. Del. 2007) .......10

*In re American Continental Corp./Lincoln Savings and Loan Securities
  Litig.*, 794 F. Supp. 1424, 1453 (D. Ariz. 1992) .................................................33

*In re Besing*, 981 F.2d 1488, 1494 (5th Cir. 1993) ...............................................28

*In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 971 (Del. Ch. 1996) ..14

*In re Caribbean K Line, Ltd.,* 288 B.R. 908, 919 (S.D. Fla. 2002) ...............23, 24

*In re e2 Communications*, 320 B.R. 849 (Bankr. N.D. Tex. 2004) .......................28

## <u>TABLE OF AUTHORITIES (Cont'd)</u>

<u>Page</u>

*In re Enivid Inc.,* 345 B.R. 426 (Bankr. D. Mass. 2006) .....................................29

*In re Global Link Telecom Corp.*, 327 B.R. 711, 718 (Bankr. D. Del. 2005) .......10

*In re Gutfreund*, SEC Admin. Pro. File No. 3-7930, 8 Law. Man. Prof.
    Conduct 414 (1992) .........................................................................................32

*In re InfoUSA, Inc. S'holders' Litig.,* No. 1956-CC, 2007 WL 2332543 (Del. Ch.
    Aug. 13, 2007) *revised* Aug. 20, 2007, slip op. at 77, available at
    http://courts.state.de.us/opinions/(f13zbcjisng4j134yamj54ak)/download.aspx?ID
    =96080 ..............................................................................................................21

*In re: OODC, LLC*, 321 B.R. 128, 134 (Bankr. D. Del. 2005).........................9, 10

*In re The Brown Schools,* 368 B.R. 394, 402 (Bankr. D. Del. 2007) ...................22

*In re The Walt Disney Co. Derivative Litig.,*
    2004 WL 2050138, at *3 (Del. Ch. Sept. 10, 2004) ..........................................12

*McCall v. Scott*, 239 F.3d 808, 818-19 (6th Cir. 2001) ........................................18

*Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 115, 124
    (3d Cir. 1998).............................................................................................10, 19

*Miller v. U.S. Foodservice, Inc.*, 361 F.Supp.2d 470 (D. Md. 2005) ...................17

*Mumford v. Stetler & Gribbin*, No. 2004-SU-2726-Y01, 2005 WL 3106535,
    at *72 (Pa. Com. Pl. Apr. 28, 2005) (citing *Ibn-Sadiika v. Riester*,
    380 Pa. Super. 397, 403, 551 A.2d 1112, 1115 (1988)) ...............................30, 33

*Relational Funding Corp. v. TCIM Serv.*, No. 01-821, 2002 WL 655479,
    at *3 (D. Del. Apr. 18, 2002) ..........................................................9, 18, 19, 27

*Resolution Trust Co. v. Farmer*, 823 F.Supp. 302, 305 (E.D. Pa. 1993)...............32

*Resolution Trust Corp. v. Holland & Knight*, 832 F.Supp. 1528, 1531
    (S.D. Fla. 1993) .................................................................................................32

*Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).........................10

*Sample v. Morgan*, 914 A.2d 647, 660 (Del. Ch. 2007) ..................................15, 19

## TABLE OF AUTHORITIES (Cont'd)

**Page**

*Select Portfolio Serv., Inc. v. Evaluation Solutions, L.L.C.,*
  2006 WL 2691784, at *9 (M.D. Fla. Sept. 20, 2006) ........................................11

*Stone v. Ritter,* 911 A.2d 362, 370 (Del. 2006) ....................................................14

*Stratechuck v. Board of Education*, 200 Fed.Appx. 91, 94, 2006 WL 2844449
  (3d Cir. 2006)......................................................................................................9

*Veneri v. Pappano*, 424 Pa. Super. 394, 397, 622 A.2d 977, 978-79 (1993) ........30

*Winschel v. Jain*, 925 A.2d 782, 788 (Pa. Super. 2007) ........................................31

*Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987)....................9

## FEDERAL STATUTES AND REGULATIONS

11 U.S.C. §§ 547, 548...............................................................................................27

§ 307 of the Sarbanes-Oxley Act of 2002, at 15 U.S.C.A. § 7245 .......................31

SEC Rule 205 at 17 C.F.R. Part 205.......................................................................31

## OTHER SOURCES

*Corporate Counsel Have Heightened Duties to Respond to Insider
  Wrongdoing*, 22 Law. Man. Prof. Conduct 145 (2006).....................................31

George C. Harris, *Taking The Entity Theory Seriously: Lawyer Liability
  for Failure to Prevent Harm to Organizational Clients Through Disclosure
  of Constituent Wrongdoing*, 11 Geo. J. Leg. Ethics 597, 638 (2007).................33

Geoffrey Hazard, Jr. and W. William Hodes, *The Law of Lawyering*,
  § 4.7 (3d ed.) .....................................................................................................32

Ronald Mullen and Jeffrey Smith, *Legal Malpractice*, § 28.29 (2007).................32

2A J. Moore, *Moore's Federal Practice* ¶ 12.07 [2.-5], at 12-99
  (2d ed. 1994) ...............................................................................................11, 18

iv

## OTHER SOURCES (Cont'd)

**Page**

Hillary A. Sale, *Monitoring* Caremark's *Good Faith*,
   32 Del. J. Corp. Law 719 (2007) ........................................................................32

Fed. R. Civ. P. 15(a) ........................................................................11, 18

## **NATURE AND STAGE OF PROCEEDINGS**

On May 21, 2007, Plaintiff, George L. Miller, the chapter 7 trustee (the "Trustee" or "Plaintiff") for the jointly-administered estates of World Health Alternatives, Inc. *et al.* (the "Debtors", or "World Health" or the "Company") filed a complaint (the "Original Complaint") asserting various causes of action including breach of fiduciary duty claims. [Docket No. 1].   On July 25, 2007, Defendant Brian T. Licastro ("Licastro") filed a motion to dismiss the Original Complaint.  [Docket No. 52].

On November 15, 2007, after reviewing documents of World Health compiled by the United States Attorney's office, and held by the United States Postal Inspection Service, as well as data from the Company's advisors, such as Daszkal Bolton LLP, Powell Goldstein LLP, and Alston & Bird LLP, the Trustee filed a motion to amend complaint as to Richard E. McDonald, John Sercu, Marc Roup, Frederick R. Jackson, Sr., and John W. Higbee.  [Docket No. 88].  Also on November 15, 2007, the Trustee filed an amended complaint (the "Amended Complaint") against all of the original defendants and Deanna Seruga (collectively, the "Defendants").  [Docket No. 89].  The Amended Complaint was filed as of right against Licastro, who did not file an Answer to the Original Complaint.

On December 11, 2007, Licastro filed a motion to dismiss (the "Motion to Dismiss") the Amended Complaint.  [Docket No. 98].  This is the Trustee's Answering Brief in Opposition to Licastro's Motion to Dismiss.

## SUMMARY OF ARGUMENT

The Trustee properly pled numerous causes of action against Brian T. Licastro under the notice-pleading requirements set forth in Rule 8(a) of the Federal Rules of Civil Procedure. Indeed, there are sufficient factual allegations set forth in the Amended Complaint that adequately support the claims asserted by the Trustee against Licastro.

The Amended Complaint details Licastro's failure to perform and/or oversee the duties and tasks for which he was responsible in his role as Vice President of Operations and in-house General Counsel to the Company. Licastro's failure to execute these duties directly contributed to the prevalent corporate wrongdoing within the Company that ultimately led to its demise and bankruptcy.

Specifically, the Amended Complaint adequately pleads sufficient factual allegations to support the following causes of action against Licastro: breach of fiduciary duty, aiding and abetting breach of fiduciary duty, waste of corporate assets, aiding and abetting waste of corporate assets, negligent misrepresentation, aiding and abetting fraud, fraudulent transfer under federal and state law, equitable subordination, and professional negligence. Accordingly, Licastro's Motion to Dismiss should be denied.

## STATEMENT OF ISSUES PRESENTED

I.         Whether Licastro's Motion Fails to Satisfy the Prerequisites for Prevailing on a Motion to Dismiss.

II.        Whether the Amended Complaint Adequately Pleads Breach of Fiduciary Duty.

III.       Whether the Amended Complaint Adequately Pleads Waste of Corporate Assets.

IV.       Whether the Amended Complaint Adequately Pleads Aiding and Abetting Set Forth in Counts III, IV and VII

V.        Whether the Amended Complaint Adequately Pleads Claims for Negligent Misrepresentation.

VI.       Whether the Amended Complaint Adequately Pleads Claims For Fraudulent Transfer.

VII.      Whether the Amended Complaint Adequately Pleads Claims for Equitable Subordination.

VIII.     Whether the Trustee Adequately Pleads a Professional Negligence Claim Against Licastro.

## STATEMENT OF FACTS

The Amended Complaint sets forth numerous allegations that paint a clear picture of corporate wrongdoing on the part of Licastro which manifests itself in the numerous causes of action asserted against him.  As alleged in the Amended Complaint, Licastro served as Vice President of Operations of World Health, as well as in-house General Counsel to the Company on a formal and/or *de facto* basis.  (Amend. Comp. ¶¶ 20-21).[2] As further alleged in the Amended Complaint, Licastro, in his capacity as Vice President of Operations and in-house General Counsel, among other things: failed to enforce or implement necessary controls, failed to provide necessary and required oversight, allowed or participated in the filing of false and misleading United States Securities and Exchange Commission ("SEC") filings and press releases, and partook in or allowed the waste of numerous corporate assets.

In his first Motion to Dismiss, Licastro failed to acknowledge his role as the Company's in-house lawyer.  *See generally*, Licastro's Memorandum of Law in Support of Motion to Dismiss [Docket No. 53].  He acknowledges this role in his current motion, and for good reason.  Attached hereto as Exhibit "A" are 18 e-mails (a mere sampling) from Licastro where he identifies himself as the Company's "General Counsel," from 2003 through 2005.

Moreover, attached as Exhibit "B" is an e-mail from his boss, then CEO Richard McDonald, who described the scope of duties related to Licastro's in-house legal work and direct involvement in the matters alleged in the Amended Complaint.  That e-mail included the following duties for Licastro:

---

[2] The Amended Complaint is referenced herein as (Amend. Comp. ¶ __).

(i)      preparation of the SEC filings;[3]

(ii)     preparation of press releases; and,

(iii)    legal advice on management structure of the Company; mergers, contracts and any other legal issues that arose within the Company.

The actions and omissions by Licastro summarized above form the very foundation for the claims in the Amended Complaint, and were the basis as well of several class action complaints against the Company that settled for several million dollars.[4]

**A.      Specific Allegations Set forth against Licastro in the Amended Complaint**

In the Amended Complaint, the Trustee asserts a number of factual allegations to support the numerous causes of action asserted against Licastro.

**1.      False SEC Statements / Negligent Misrepresentation**

The Trustee alleges that Licastro either allowed to be issued and/or reviewed financial statements on behalf of World Health which were materially false and misleading.  (Amend. Comp. ¶ 151).  The Court can make the obvious inferences from the allegations set forth in the Amended Complaint that demonstrate that as Vice President of Operations and in-house General Counsel, Licastro participated in or was aware of the SEC statements which were fraudulent.  (Amend. Comp. ¶133-136).  In fact, Licastro was involved in preparing the SEC filings of World Health and thus had intimate information concerning the legal issues of the Company. *See* Exhibit "C" (e-mails of Licastro demonstrating his involvement with SEC filings of the Company).

---

[3] *See* Exhibit "B" where the CEO also tells Licastro in an e-mail to: "oversee the public Company from a legal standpoint."

[4] *See* Exhibit "D" (copy of Class Action Settlement Agreement).

The Amended Complaint also sets forth allegations that Licastro made and/or allowed to be made intentional misstatements to the lenders which caused an overfunding of the Company's lending arrangements by approximately $6.5 million. (Amend. Comp. ¶ 142). Licastro artificially inflated the Company's reported financial performance by including non-revenue amounts (funds received for the exercise of warrants). (Amend. Comp. ¶¶ 143-144).

### 2.    Waste of Corporate Assets

The Trustee further alleges that, starting as early as 2003, Licastro partook in or was aware of a continuous wasting of the Company's limited resources on expensive and unnecessary luxuries for himself or for other Defendants. (Amend. Comp. ¶ 82). Such corporate waste included the leasing of flights on a private jet, substantial lease payments for luxury cars, and substantial payments for costs associated with charter flights. (Amend. Comp. ¶¶ 83-88).

### 3.    Fraudulent Transfers

It is further alleged that within one year of the petition date, Licastro transferred to himself items of value from World Health such as the Indemnification Agreement which named Licastro as an indemnitee. (Amend. Comp. ¶ 230). The transfers of the Indemnification Agreements were executed and/or entered into with the actual intent to hinder, delay or defraud creditors of the Company. (Amend. Comp. ¶ 232). World Health was insolvent at the time of the transfers or became insolvent as a result of the transfers. (Amend. Comp. ¶ 234).

### 4.    Fraudulent Conveyances

The Amended Complaint further alleges that no consideration was provided by Licastro in exchange for the Indemnification Agreement entered into between Licastro and World Health.  (Amend. Comp. ¶ 158).  The Trustee pleads that such an arrangement constitutes a fraudulent conveyance to Licastro.  (Amend. Comp. ¶ 159).[5]

### 5.    Allegations Relating to Breach of Fiduciary Duties

The Trustee alleges that by reason of his position as a high-ranking officer of World Health, Licastro owed the Company and the shareholders a fiduciary obligation of loyalty and due care.  (Amend. Comp. ¶ 166).

It is further alleged that Licastro exhibited a substantial and systematic failure to control and monitor the accrual of unnecessary expenses.  (Amend. Comp. ¶ 91).  As a result, the Company's finances were controlled at the Defendants' whim and used to support frivolous expenses that the Company could not bear.  (Amend. Comp. ¶ 90).  The Amended Complaint further alleges Licastro's failure to implement financial controls and proper checks and balances in connection with spending.  (Amend. Comp. ¶ 92-97).

Licastro owed duties to the Company and the shareholders to implement adequate internal controls and procedures to assure that the financial condition and business affairs of the Company were reported truthfully and accurately.   (Amend. Comp. ¶ 167).  Licastro owed a duty to insure that the Company complied with all applicable state and federal laws and that the Company's financial statements were prepared and presented in accordance with generally accepted accounting principles ("GAAP").  (Amend. Comp. ¶ 167).  In addition, since the Company was apparently insolvent at all relevant times,

---

[5] The Trustee is continuing his investigation into a partnership between the CEO, McDonald, and Licastro, regarding a real estate investment involving a sports complex, referred to as "DR Ice, Inc."

7

Licastro owed these fiduciary duties to the Company's creditors as well.  (Amend. Comp. ¶ 168).  Furthermore, Licastro owed fiduciary duties to World Health in his capacity as in-house General Counsel on a *de facto* and/or formal basis.  (Amend. Comp. ¶ 21).  It is alleged that Licastro violated all of these duties and abdicated his oversight responsibilities to World Health in connection with the acts of corporate wrongdoing detailed in the Amended Complaint.  (Amend. Comp. ¶ 172).

**B.      Resulting Harm**

As a result of Licastro's corporate wrongdoing, the Company and its creditors have been financially harmed.  (Amend. Comp. ¶¶ 179, 184, 190, 196, 202, 221, 257).  Specifically, due to such misconduct, the Company was a defendant in multiple securities and class action lawsuits, and is now bankrupt.  (Amend. Comp. ¶ 172).  Attached as Exhibit "D" is a copy of the Class Action Settlement Agreement.  Moreover, Licastro and other Defendants are now the subject of continuing SEC and IRS investigations.  (Amend. Comp. ¶ 172).  In light of such events, and on behalf of the Debtors' estates, the Trustee requests, among other relief, that Licastro disgorge these profits, benefits and other compensation acquired as a result of his corporate wrongdoing, as well as other appropriate relief.

WM1A 214767v5 12/26/07

## ARGUMENT

### I.   LEGAL STANDARD

Licastro seeks to dismiss the Trustee's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure.

It is well established that a motion to dismiss tests the legal sufficiency of the complaint.  *Stratechuck v. Board of Education*, 200 Fed.Appx. 91, 94, 2006 WL 2844449 (3d Cir. 2006).  However, "[u]nder the federal notice pleading rules, the threshold for stating a cause of action to survive a 12(b)(6) motion is very low."  *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).  Moreover, this Court has recently held that "[g]ranting a motion to dismiss is a 'disfavored' practice [and that] in evaluating a motion to dismiss, the issue is not whether the complainant will ultimately prevail but rather whether the complainant is entitled to offer evidence in support of his claim."  *In re: OODC, LLC*, 321 B.R. 128, 134 (Bankr. D. Del. 2005) (citations omitted)).

In fact, "Rule 8(a) [General Rules of Pleading] imposes *no requirement* that the pleading state facts sufficient to constitute a cause of action."  *See Brown v. Peoples Security Ins.*, 158 F.R.D. 350, 352 (E.D. Pa. 1994) (citing *Schaedler v. Reading Eagle Publication Inc.*, 370 F.2d 795, 798 (3d Cir. 1967)).  *See also*, *Relational Funding Corp. v. TCIM Serv.*, No. 01-821, 2002 WL 655479, at *3 (D. Del. Apr. 18, 2002) ("[t]he statement need not contain detailed facts, but it requires that plaintiff give defendant fair notice of what the claim is and the grounds upon which it rests.  A plaintiff is not

required to state precisely each element of the claim."); *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 115, 124 (3d Cir. 1998) (same).

Courts considering 12(b)(6) motions must "accept as true all allegations in the complaint *and all reasonable inferences that can be drawn therefrom*, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989) (emphasis added). A complaint may not be dismissed for failing to state a claim "unless plaintiffs can prove *no set of facts* in support that would entitle them to relief." *City of Philadelphia v. Lead Industries Ass'n, Inc.*, 994 F.2d 112, 118 (3d Cir. 1993) (internal citations omitted).[6]

The "short and plain statement of the claim" mandated by Rule 8(a) of the Federal Rules of Civil Procedure applies to all of the Trustee's claims against Licastro except the allegations of fraudulent transfers. As to the counts in the Amended Complaint against Licastro that arise out of allegations of fraud, the Amended Complaint includes sufficient particularity to notify Licastro of the charges against him so that he may adequately prepare an answer. *In re Global Link Telecom Corp.*, 327 B.R. 711, 718 (Bankr. D. Del. 2005).

Moreover, a bankruptcy trustee, as a third party outsider to the debtor's transactions, is generally afforded greater liberality in pleading fraud. *In re Am. Bus. Fin. Serv., Inc.*, 361 B.R. 747, 753-54 (Bankr. D. Del. 2007); *see also In re OODC, LLC*, 321 B.R. at 140 ("to state a claim for fraud … all the plaintiff need do is inform the defendant of the particular conduct which is alleged to have been fraudulent. This requirement is

---

[6] Even when a 12(b)(6) motion is granted, a plaintiff should be afforded an opportunity to amend the complaint, if it appears that the deficiencies can be corrected by amendment. See 2A J. Moore, Moore's Federal Practice ¶ 12.07 [2.-5] at 12-99 (2d ed. 1994); *see also* Fed. R. Civ. P. 15(a).

relaxed even more when the plaintiff is a third party, such as a trustee, because a third party generally has less information on which to base its allegation").

The Trustee has met the requisite pleading requirements and this Court should not grant the extreme relief of dismissal that is sought by the Defendant. Licastro has failed to meet the burden necessary to deprive the Trustee of the opportunity to proceed further and to offer evidence in support of his claims.

## II.    THE AMENDED COMPLAINT ADEQUATELY PLEADS CLAIMS FOR BREACH OF FIDUCIARY DUTY.

The Amended Complaint alleges that Licastro is an officer of the Company, and thus he stood in a fiduciary relationship to the Company. (Amend. Comp. ¶¶ 166, 174). Florida law applies to the fiduciary duty claims based on the internal affairs doctrine in light of the Company being incorporated in Florida. *Select Portfolio Serv., Inc. v. Evaluation Solutions, L.L.C.*, 2006 WL 2691784, at *9 (M.D. Fla. Sept. 20, 2006).

It is well established under Florida law that not just directors, but officers as well, such as Licastro, owe fiduciary duties to a corporation. *See Cohen v. Hattaway,* 595 So.2d 105, 107 (Fla. 5th DCA 1992). Further, "[t]he Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines." *Connolly v. Agostino's Rest.,* 775 So.2d 387, 388 n.1 (Fla. Dist. Ct. App. 2000) (citing *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1459 n.22 (11th Cir. 1989)). Given that Florida courts rely upon Delaware corporate law for guidance, Delaware corporate law will be examined throughout this Answering Brief. Delaware courts likewise have held that fiduciary duties are owed by officers to the corporation and its shareholders. *In re The Walt Disney*

11

*Co. Derivative Litig.,* No. 15452, 2004 WL 2050138, at *3 (Del. Ch. Sept. 10, 2004).

Therefore, Licastro owes fiduciary duties to the corporation.

Licastro in his Motion argues that the Trustee must plead the basis for all claims of breach of fiduciary duty with particularity. (Op. Br. at 10).[7] Indeed, Licastro asserts that because the Trustee's breach of fiduciary duty claims are alleged to be governed by Florida law and because those claims relate to alleged fraudulent conduct, the Trustee must plead its basis for all of those claims with particularity. *See id.* This is not the law. Moreover, the Trustee's claims for breach of fiduciary duty against Licastro are not solely based upon allegations of fraud. In fact, the Trustee alleges that Licastro breached his fiduciary duties and thereby damaged the Debtors for other reasons. For example, Licastro:

- Failed to implement internal controls that would have prevented the wrongdoing alleged with particularity herein;
- Failed to fulfill his fiduciary obligation to manage the Company with the best interests of the Company in mind;
- Permitted McDonald to cause the repayment of substantial portions of the related party loan without regard to the best interests of the Company, and without repayment of numerous secured obligations.
- Committed corporate waste by using the Company's assets to support unnecessary expenses, while at the same time exposing the Company to millions of dollars in liabilities and costs;

(Amend. Comp. ¶ 175).

Therefore, because the Trustee's claims for breach of fiduciary duty against Licastro are not solely based upon allegations of fraud, the Trustee is not required to plead each and every instance of a breach of fiduciary duty on the part of Licastro with particularity. However, regardless of whether the heightened pleading requirements of Rule 9(b) apply to the Trustee's claims of breach of fiduciary duty, as opposed to Rule

8(a) for non-fraudulent claims, the Trustee has pled with particularity Licastro's breaches of fiduciary duty.

Licastro's argument that Count II of the Amended Complaint should be dismissed because the Trustee did not specifically plead that Licastro actively committed the wrongdoing that led to breaches of fiduciary duties is baseless.

It is well established in corporate jurisprudence that liability for breach of a fiduciary duty can be imposed on a director or officer even if the extent of their wrongdoing was limited to failing to act to make themselves aware of another's breach or failing to prevent another director or officer from breaching a fiduciary duty. *See ATR-Kim Eng. Fin. Corp. v. Araneta,* No. 489-N, 2006 WL 3783520, at *20 (Del. Ch., Dec. 21, 2006).

In *Araneta*, the Delaware Chancery Court found directors liable for not stopping the faithless conduct of the company's majority shareholder and fellow director. The directors of this corporation were described by the Chancery Court as "stooges" and "mere tools" given that they took no action to preclude Araneta, the majority shareholder, from transferring the company's asset to members of his family in violation of his fiduciary duties. *See id.* at *1. The Court imposed liability on these directors for failing to carry out their fiduciary duty to protect all of the company's shareholders.

In addition, the failure to implement an adequate monitoring system and/or the failure to utilize such system to safeguard against corporate wrongdoing constitutes a breach of fiduciary duty that will likewise impose liability on a director or officer. *See In*

---

[7] Licastro's Opening Brief in Support of the Motion to Dismiss is referenced herein as (Op. Br. at __).

*re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 971 (Del. Ch. 1996). *See also Stone v. Ritter,* 911 A.2d 362, 370 (Del. 2006).

As the Vice President of Operations and in-house General Counsel[8] to World Health, Licastro was responsible for failing to implement any internal monitoring systems and/or failing to utilize such systems as is required by *Caremark.*

The duty of oversight imposed on fiduciaries of corporations was well explained in the seminal decision of *Caremark*, *supra*, and recently reaffirmed by the Delaware Supreme Court in *Stone v. Ritter, supra.*

In a recent decision applying *Caremark*, the Delaware Chancery Court described *Caremark* as imposing liability for failure of a fiduciary to monitor operations where the fiduciary's "indolence was so persistent that it could not be ascribed to anything other than a knowing decision not to even try to make sure the corporation's officers had developed and were implementing a prudent approach to ensuring law compliance." *Desimone v. Barrows*, 924 A.2d 908, 936 (Del. Ch. 2007). *See, Caremark*, 698 A.2d at 968-70. *See also Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003).

The court in *Desimone* found support for its foregoing application of *Caremark* in the Delaware Supreme Court decision in *Stone*, which "clarified one of the most difficult questions in corporate law--when directors with no motivation to injure the firm can be held responsible if the corporation incurs serious harm as a result of its failure to obey the law." *Desimone*, 924 A.2d at 935. Moreover, the court in Desimone observed that: "Delaware corporate law has long been clear on this rather obvious notion; namely, that it

---

[8] *See* e-mails sent by Licastro wherein he identifies himself as general counsel to World Health, marked as Exhibit "A".

is utterly inconsistent with one's duty of fidelity to the corporation to consciously cause the corporation to act unlawfully." *See id.* at 934.

Applying the foregoing to the case at bar, these cases mean that Licastro may not have had motivation to injure the firm, but under *Caremark* he can be held responsible for causing the corporation to act unlawfully by virtue of his role, for example, in helping to prepare SEC filings that included material misrepresentations and thus exposed the corporation to liability for which it paid substantial sums in class action litigation, and also caused the corporation harm in other obvious ways. *See Sample v. Morgan*, 914 A.2d 647, 660 (Del. Ch. 2007) (refusing to dismiss a complaint against directors that the court found to be "unwitting and uninformed accomplices" in a plan to enrich other directors).

Moreover, in the *Araneta* decision, *supra*, the court found two directors liable for failing to monitor the self-dealing conduct of another director.   The court in *Araneta* observed that:

> One of the most important duties of a corporate director is to monitor the potential that others within the organization will violate their duties.   Thus, a "director's obligation includes a duty to attempt in good faith to assure that a corporate information and reporting system, which the board considers to be adequate, exists."   Obviously, such a reporting system will not remove the possibility of illegal or improper acts, but it is the directors' charge to "exercise a good faith judgment that the corporation's information and reporting system is in concept and design adequate to assure the board that appropriate information will come to its attention in a timely manner and as a matter of ordinary questions, so that it may satisfy its responsibility."

*Araneta,* 2006 WL 3783520 at *19 (citing *Caremark*, 698 A.2d at 970).

The *Araneta* court also relied on the Supreme Court's *Stone* decision as follows:

WM1A 214767v5 12/26/07

> *Caremark* articulates the necessary conditions predicate for director oversight liability:  (a) The directors utterly failed to implement any reporting or information system or controls; or (b) Having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.

*Araneta,* 2006 WL 3783520 at *19 (citing *Stone*, 911 A.2d at 370).

As in *Araneta* where the court found liability, in the case at bar there was no reporting system in place, and no other information systems or controls were ever considered, let alone implemented.  As in the case at bar, in *Araneta*, the board did not have regular board meetings.  *Araneta,* 2006 WL 3783520 at *20.

So too as in the case at bar, the court found in *Araneta* that even though the majority shareholder and controlling director was emptying the company of major assets, "the other directors did nothing to make themselves aware of this blatant misconduct or to stop it.  Put in plain terms, it is no safe harbor to claim that one was a paid stooge for a controlling stockholder."  *Araneta,* 2006 WL 3783520 at *20-21.

As part of its reasoning for imposing liability, the court in *Araneta* observed that when the passive directors were required to be loyal to their company, they chose instead to be loyal to the controlling shareholder and they placed their willingness to serve the needs of their employer over their important obligations owed to the company and all of its stockholders.  *Araneta,* 2006 WL 3783520 at *21.

It is the Trustee's understanding that no monitoring systems were in place at all at the Company.  It was a breach of Licastro's fiduciary duties not to rectify that situation.

It is clear that major corporate wrongdoing was committed by the managers of World Health and that gave rise to concomitant breaches of fiduciary duties on the part of Licastro.

It is also clear that Licastro, as Vice President of Operations and the only lawyer in top management, played a central role in the operation of World Health during the time that such corporate wrongdoing occurred.

Regardless of whether Licastro personally committed the acts of corporate wrongdoing that are described in the Amended Complaint, or if these acts were personally committed by his fellow directors and officers, Licastro knew or should have known of this corporate wrongdoing and concomitant breaches of fiduciary duties that were being committed by the management of World Health, and likewise failed to do anything to prevent their occurrence.  Specifically, Licastro failed to make any effort to implement any internal monitoring systems, as is required by *Caremark*.

In *Miller v. U.S. Foodservice, Inc.*, 361 F.Supp.2d 470 (D. Md. 2005) the court, applying Delaware law, rejected a Motion to Dismiss claims against officers for failure to act in the face of wrongdoing by other members of management.  The court also cited to decisions of the United States Supreme Court and other authoritative sources for support of the fundamental principle of corporate law that fiduciary duties of due care, good faith and loyalty apply to officers just as much as they apply to corporate directors.  *Id*. at 477 and n. 9.

Moreover, the court cited to a federal appellate decision also applying Delaware law for the principle that a fiduciary "need not have acted intentionally to harm the corporation in order to be liable for breach of the duty to exercise appropriate attention to

17

potentially illegal corporate activities." *Id.* at 478 (citing *McCall v. Scott*, 239 F.3d 808, 818-19 (6th Cir. 2001)).  In *Miller*, the court refused to dismiss claims against members of management that failed to either uncover or stop wrongdoing based on the *Caremark* principles that:  "Directors and officers must assure that a reporting system exists which is 'in concept and design adequate' to provide appropriate and timely information to them so that they may satisfy their monitoring responsibility.  Therefore, questions as to whether a director had grounds to suspect wrongdoing by other officers or directors presume the existence of an adequate reporting system." *Id.* at 480.  *See* Amend Comp. ¶¶ 169 – 172.

Thus, the notice requirements of the federal rules have been satisfied with respect to the Trustee's breach of fiduciary claims.  *See Relational Funding Corp.*, 2002 WL 655479, at *3 ("[t]he statement need not contain detailed facts, but it requires that plaintiff give defendant fair notice of what the claim is and the grounds upon which it rests.  A plaintiff is not required to state precisely each element of the claim.")  Surely, it <u>cannot</u> be stated that plaintiff:  "can prove *no set of facts* in support that would entitle them to relief." *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 118 (3d Cir. 1993) (internal citations omitted).[9]

## III.   THE AMENDED COMPLAINT PROPERLY PLEADS A CLAIM AGAINST LICASTRO FOR WASTE OF CORPORATE ASSETS.

The Trustee adequately pleads. a claim for waste of corporate assets against Licastro.  The proof necessary to establish corporate waste "entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range

---

[9] Even when a 12(b)(6) motion is granted, a plaintiff should be afforded an opportunity to amend the complaint, it appears that the deficiencies can be corrected by amendment.  *See* 2A J. Moore, Moore's Federal Practice ¶ 12.07 [2.-5], at 12-99 (2d ed. 1994); *see also* Fed. R. Civ. P. 15(a).

at which any reasonable person might be willing to trade.   Most often the claim is associated with *a transfer of corporate assets that serves no corporate purpose;  or for which no consideration at all is received.*   Such a transfer is in effect a gift."   *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000) (emphasis added).   The above standard, however, is the level of proof necessary to *prove* as opposed to *plead* a claim for waste. Here, the Amended Complaint contains sufficient facts to satisfy the pleading requirement for waste.

Licastro improperly argues that the Trustee failed to sufficiently *plead* waste of corporate assets because the Trustee did not *specifically* state that "any such expenses were so one sided such that no reasonable business person would consider them adequate". (Op. Br. at 12).   This, however, is not the required pleading standard for a claim of waste.   The standard for pleading waste is much less stringent than Licastro suggests.   In fact, "[t]he doctrine of waste . . . allows *a plaintiff to pass go at the complaint stage* even when the motivations for a transaction are unclear by pointing to economic terms so one-sided as to create an inference that no person acting in a good faith pursuit of the corporation's interests could have approved the terms."   *See Sample,* 914 A.2d at 650; *see also Relational Funding Corp.,* 2002 WL 655479 at *3; *Menkowitz,* 154 F.3d at 124 (holding a plaintiff is not required to state precisely each element of the claim).

The allegations set forth in the Amended Complaint easily allows the Trustee to "pass go at the complaint stage".   The Amended Complaint states that Licastro at all relevant times was the Company's Vice President of Operations and in-house General Counsel.   (Amend. Comp. ¶¶ 20,21).   As General Counsel and Vice President of

19

Operations, Licastro knew or should have known about the state of the Company's limited resources and the routine waste of those limited resources on expensive and unnecessary luxuries for the Defendants. (Amend. Comp. ¶ 82).

The Amended Complaint specifically alleges that in May 2003, the Company entered into an agreement to lease 25 hours of private flight time from Marquis Jet for $112,939.70 and absorbed monthly lease payments for luxury cars provided to defendants Marc Roup and Richard McDonald in the monthly amounts of $2,207.38 and $2,045.72 respectively. During this same period of time, the Company had negative net income in the amount of $33,094.00. Moreover, the Amended Complaint alleges that during this period of time, the Company had only $177,699 of cash on hand. (Amend. Comp. ¶¶ 83-87).

Further, the Amended Complaint alleges that in 2004 the Company incurred private flight costs in the amount of $114,181.11 during a period of time when it was in the process of raising funds because of its inability to fund operations and growth. In fact, the Amended Complaint alleges that according to the Company's SEC Form 10-KSB (as amended) for 2004, the Company had net losses of $13,427,523 for fiscal year 2004. (Amend. Comp. ¶¶ 88-90). In addition, the Amended Complaint alleges that in connection with at least one of the Company's many acquisitions, it paid out a $500,000 bonus to Defendant John Sercu along with 1 million shares of the Company's stock. (Amend. Comp. ¶¶ 46,47).

Notwithstanding the Company's limited resources, Licastro as General Counsel and Vice President of Operations, along with the other officers and directors of the

Company, caused and/or allowed the Company to squander a significant percentage of its assets on frivolous luxuries that the Company could not bear.  (Amend. Comp. ¶ 90).

A collective reading of these allegations exhibits economic terms that are completely one-sided, namely the booking of expensive chartered flights for personal pleasure and the granting of excessive bonuses to certain directors and officers of World Health all while World Health was experiencing negative net income.

Licastro next argues that he cannot be held liable for corporate waste simply because the Trustee did not allege that Licastro was on the board of directors of World Health.  This argument is also without merit.  As stated above, it is well established under Florida that not just directors, but also officers, owe fiduciary duties to a corporation. *Cohen*, 595 So.2d at 107.

Finally, Licastro argues that the Amended Complaint does not set forth a claim for waste because the Trustee made no specific allegations as to Licastro's role in committing the corporate waste.  This argument again misstates the standard for notice pleading.   The allegations made in the Amended Complaint, as discussed above, implicates Licastro as a Vice President of Operations and General Counsel who undeniably knew or should have known of the excessive waste of World Health's assets and allowed or participated in such waste.   Such allegations are sufficient to provide Licastro with notice of a claim for waste and the grounds upon which such claims rest. *See Relational Funding Corp.*, 2002 WL 655479 at *3 ("[t]he statement need not contain detailed facts, but it requires that plaintiff give defendant fair notice of what the claim is and the grounds upon which it rests.  A plaintiff is not required to state precisely each element of the claim.")  *See also*, *In re InfoUSA, Inc. S'holders' Litig.,* No. 1956-CC,

21

2007 WL 2332543, at *27 (Del. Ch. Aug. 13, 2007), *revised* Aug. 20, 2007, slip op. at

77, available at

 http://courts.state.de.us/opinions/(f13zbcjisng4j134yamj54ak)/download.aspx?ID=96080

(denying a motion to dismiss corporate waste claim where complaint alleged

extravagances that included the lease of an aircraft, office space and luxury and

collectible cars).

Significantly, in *Info USA,* although the Defendants were directors as opposed to

officers, many of whom did not personally participate in the excessive waste of corporate

assets, the Court held that under notice pleading requirements, it could not grant the

motion to dismiss unless it found that plaintiffs were not entitled to recover under any

conceivable set of circumstances susceptible of proof. *See InfoUSA,* slip op. at 77 .

Similarly, here the allegations made in the Amended Complaint against Licastro,

including his role as General Counsel and Vice President of Operations in allowing the

excessive waste to occur is sufficient to withstand dismissal at the pleading stage.  As a

result, Licastro's motion to dismiss should be denied.

## IV.    THE AMENDED COMPLAINT ADEQUATELY PLEADS CLAIMS FOR AIDING AND ABETTING SET FORTH IN COUNTS III, IV AND VII.

### A.    Aiding and Abetting Breach of Fiduciary Duty

The Trustee's second claim for relief asserts a claim for aiding and abetting

breach of fiduciary duty against Licastro.  "Although the elements of a claim for aiding

and abetting a breach of fiduciary duty count are couched in terms of the primary violator

being a fiduciary and the aider and abettor a non-fiduciary, there is no case law that

precludes such a claim against a fiduciary."  *In re The Brown Schools,* 368 B.R. 394, 402

(Bankr. D. Del. 2007).

22

As alleged in the Amended Complaint, the Defendants, including Licastro, exhibited a substantial and systematic failure to control and monitor the accrual of unnecessary expenses.  Further, Defendants failed to implement financial controls and proper checks and balances, including failure to maintain checks and balances to ensure that the information provided by McDonald to third parties was complete, fair and accurate.  *See In re Caribbean K Line, Ltd.,* 288 B.R. 908, 919 (S.D. Fla. 2002) (to state a claim for aiding and abetting breach of fiduciary duty, a plaintiff must allege: (1) a fiduciary duty; (2) a breach of this duty; (3) knowledge of the breach by the alleged aider and abettor; and (4) the aider and abettor's substantial assistance of encouragement of the wrongdoing).

By failing to act to establish proper financial controls, checks and balances, and monitoring systems as required by *Caremark*, and as explained in great detail, *supra*, Licastro substantially assisted his fellow directors and officers in breaching their respective fiduciary duties.  Namely, (i) a fiduciary duty existed to set up such controls, (ii) there was a breach of this duty in failing to act on the part of Licastro's fellow officers, (iii) as a high-ranking officer Licastro knew, or very well should have known, that no such controls were in place, and lastly (iv) Licastro assisted in non-compliance by not taking action to implement such controls. Through this activity, or lack thereof, Licastro aided and abetted breaches of fiduciary duty and caused financial misrepresentations which damaged the company.  The analysis of Licastro's breach of fiduciary duties is explained in detail in prior sections of this brief.

WM1A 214767v5 12/26/07

### B.   Aiding and Abetting Waste of Corporate Assets

Despite the fact that Licastro does not specifically address why the Trustee's claim for aiding and abetting waste of corporate assets should be dismissed, the Trustee will still briefly address this here.  As set forth in the above analysis pertaining to waste, the Amended Complaint contains factual allegations that Licastro was the Vice President of operations and in-house General Counsel of World Health; knew of the excessive waste of World Health's assets; and allowed such waste to continue.  (Amend. Comp. ¶¶ 20, 21, 186-89, 192-95).  A collective reading of those facts, with all reasonable inferences drawn in the Trustee's favor, properly paints the picture that Licastro as General Counsel failed to take steps to legally prevent such waste from occurring and instead provided unfettered discretion to Defendant McDonald and other Company officers to engage in the above described excesses at a time when the Company was experiencing negative net income and struggling to raise necessary cash.  These actions and/or inactions by Licastro as plead in the Amended Complaint sets for a proper claim at the pleading stage for aiding and abetting waste.

### C.   Aiding and Abetting Fraud

To properly plead a claim for aiding and abetting fraud, a plaintiff must plead: (1) the existence of the underlying fraud; (2) that the defendant had knowledge of the fraud and (3) that the defendant provided substantial assistance to advance the commission of the fraud.  *In re Caribbean K. Line, Ltd.,* 288 B.R. 908, 919 (S.D. Fla. 2002).  The allegations in the  Amended Complaint readily meets this pleading requirement.

Significantly, Licastro concedes the first element in his opening brief and goes on to argue that the Amended Complaint does not set forth Licastro's knowing participation

in the fraud. (Op. Br. at 14).   The Amended Complaint, however, sets forth sufficient allegations that Licastro knowingly participated McDonald's fraud.   The Amended Complaint alleges that Licastro was aware of the fraudulent conduct that McDonald was perpetrating (including knowledge of the improper "booking" of revenue for financing received from the exercise of warrants).   In fact, Licastro's duties as General Counsel included preparation of the SEC documents, press releases and other documents which in this case were disseminated to the public and the Company's creditors with numerous false and misleading statements along with maintaining of proper monitoring systems to detect accounting and other abnormalities.   *See* e-mail outlining Licastro's in-house General Counsel duties attached hereto as Exhibit "B".

Further, the Amended Complaint sets forth ways in which Licastro knowingly participated in Defendant McDonald's fraud.   For example, the Amended Complaint states that Licastro failed to establish any system to adequately monitor the Company's financial representations and performance which enabled McDonald to make false representations regarding the Company's performance and financial stability.   (Amend. Comp. ¶ 215).    Licastro joined McDonald in his pattern of fraud by making misrepresentations, or confirming McDonald's misrepresentations, to creditors and investors.   (Amend. Comp. ¶ 216).   Licastro also provided substantial assistance to McDonald by failing to properly report misrepresentations that were knowingly false. (Amend. Comp. ¶ 217).    These allegations in the Amended Complaint against Licastro are sufficiently detailed under a notice pleading standard to properly set forth a claim for aiding and abetting fraud.

## V.   THE AMENDED COMPLAINT ADEQUATELY PLEADS A CLAIM FOR NEGLIGENT MISREPRESENTATION.

The Trustee's Amended Complaint alleges, with particularity, that the Defendants, including Licastro, negligently made misrepresentations to the public regarding the financial affairs of World Health.   To assert a claim of negligent misrepresentation, a plaintiff must plead: (1) a misrepresentation of a material fact; (2) the representor either knew of the misrepresentation, made the misrepresentation without knowledge as to its truth or falsity, or must have made the representation under the circumstances in which he ought to have known of its falsity; (3) the representor must have intended the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.   *Gibbs v. Ernst,* 647 A.2d 882, 890 (Pa. 1994).  (These acts occurred in Pennsylvania.)

It is clear from the Amended Complaint that a misrepresentation of a material fact was made - this occurred in press releases and other SEC filings, as described in the Amended Complaint.  (Amend. Comp. ¶ 198).  This also occurred in misrepresentations made regarding the status of payment of the Company's taxes and revenues generated and the value of the Company's assets.  (Amend. Comp. ¶ 199).  As Vice President of Operations and in-house General Counsel, Licastro allowed the misrepresentations to be made, and either knew or should have known of the misrepresentation.  It is clear from the pleadings of the Amended Complaint that Licastro intended for these representations to be relied upon, given that they were statements that were made to the SEC and disseminated to the public.  Lastly, the Amended Complaint adequately alleges that there was injury. (Amend. Comp. ¶¶ 201-202).   Therefore, as all of the above elements are adequately pled in the Amended Complaint, the Trustee submits that such allegations are

26

sufficient to provide Licastro with notice of a claim for negligent misrepresentation and the grounds upon which such claims rest.  *See Relational Funding Corp.*, 2002 WL 655479 at \*3 ("[t]he statement need not contain detailed facts, but it requires that plaintiff give defendant fair notice of what the claim is and the grounds upon which it rests.  A plaintiff is not required to state precisely each element of the claim").

## VI.    THE AMENDED COMPLAINT ADEQUATELY PLEADS CLAIMS FOR FRAUDULENT TRANSFER.

The Trustee's Amended Complaint alleges, with particularity, that the Trustee is entitled to avoid fraudulent transfers made to the Defendants pursuant to 11 U.S.C. § 548 and to recover the amount of the transfers pursuant to 11 U.S.C. § 550.  (Amend. Comp. ¶¶ 228-235).  Specifically, the Amended Complaint alleges that within one year of the Petition Date, Licastro transferred to himself items of value from World Health such as the Indemnification Agreement, along with other transfers made from March 11, 2005 through November 18, 2005 totaling $6,134.66.  (Amend. Comp. ¶¶ 230-231).  The Indemnification Agreement was executed and/or entered into with the actual intent to hinder, delay or defraud creditors of the Company.  (Amend. Comp. ¶ 232).  Further, it is alleged that World Health received less than reasonably equivalent value in exchange for World Health's transfers to McDonald as described above and for the Indemnification Agreement.  (Amend. Comp. ¶ 233). Also, World Health was insolvent on the date the transfers were made to McDonald and the other Defendants or became insolvent as a result of the transfers.    (Amend. Comp. ¶ 234).  These allegations, as plead in the Amended Complaint, adequately set forth a claim for fraudulent transfer of assets of the Debtors' estates.

Courts have held that the granting of agreements providing for the release of claims can be properly found to be property of the bankruptcy estate and thus, considered a fraudulent transfer. *See In re e2 Communications*, 320 B.R. 849 (Bankr. N.D. Tex. 2004). In *e2 Communications,* the president and director of the debtor corporation made several transfers to the debtor, which was experiencing cash flow problems, in exchange for five promissory notes and a security agreement. *Id*. at 851. Thereafter, the director and the debtor entered into a Contribution and Release Agreement ("CRA"), signed by the president and another director, which released the president from future claims against him related to the corporation. The trustee argued that the CRA was an avoidable fraudulent transfer under Sections 547(b) and 548 of the Bankruptcy Code, while the defendant director alleged the CRA itself was not a fraudulent transfer. *Id*. at 852-854. In denying the director's motion for summary judgment, the court held that "the release of claims provided by . . . the CRA is itself a transfer of property of the estate that is subject to being avoided under applicable law." *Id*. at 855. The Court reasoned that a cause of action is property of the estate, and that a release of claims falls within the definition of a transfer under § 101(54).

Further, *e2 Communications*, held that the release of a corporate debtor's claims against its former president and director, as part of a contribution release agreement executed by the parties prepetition, was a "transfer" of an "interest of the debtor in property" that is subject to avoidance as a fraudulent transfer under 11 U.S.C. §§ 547, 548. The legislative history of the term "transfer" under the Bankruptcy Code reveals that it was drafted to be "as broad as possible." *Id*. at 855. *See also In re Besing*, 981 F.2d 1488, 1494 (5th Cir. 1993) (holding that state court dismissal of a cause of action

28

was a "transfer" under section 548). Thus, the court found that "a release is a method of 'disposing of or parting with' a cause of action." *Id*. at 856. Where the debtor would lose the right to assert a cause of action against a director for malfeasance pursuant to a release or indemnification provision, a fraudulent transfer claim is proper. *Id. See also In re Enivid Inc.,* 345 B.R. 426 (Bankr. D. Mass. 2006) (plaintiff trustee's cause of action asserting that certain payments made under a director's indemnification agreement were fraudulent transfers or preferential transfers pursuant to sections 547 and 548 of the Bankruptcy Code survived motion to dismiss).

Licastro's Motion attempts to paint a picture wherein the Trustee haphazardly alleged a fraudulent transfer to Licastro on the *bare* allegation that Licastro was a party to the Indemnification Agreement. This fact should not be minimized as Licastro suggests – the Indemnification Agreement was for all costs associated with shareholder fraud lawsuits, including attorneys' fees and damages that these individuals might otherwise have to pay. Licastro does not deny that he was a party to the Indemnification Agreement. Further, Licastro has not asserted that anything of value was given to the Debtor in exchange for the Indemnification Agreement. Instead, he references standard boiler plate language in the Indemnification Agreement that it was given in exchange for the "continued services from the Indemnitee to the Company". This boiler plate language is not sufficient to establish at the pleading stage that sufficient value was given in exchange for the Indemnification Agreement. Thus, based on the Debtor's loss of any right against Licastro pursuant to the Indemnification Agreement, a fraudulent transfer claim is proper and the Trustee is entitled to avoid the transfers made to the Defendants pursuant to 11 U.S.C. § 548 and to recover the amount of the transfers to the Defendants

pursuant to 11 U.S.C. § 550.[10]

## VIII.  THE TRUSTEE'S PROFESSIONAL NEGLIGENCE CLAIM AGAINST LICASTRO SHOULD NOT BE DISMISSED.

The claim for professional negligence against Licastro should not be dismissed. "The three elements of a cause of action for professional negligence (or legal malpractice) are: (1) the employment of the attorney or other basis for his duty to act as an attorney; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) that such negligence was the proximate cause of damage to the plaintiff." *Mumford v. Stetler & Gribbin*, 2005 WL 3106535, at *72 (Pa. Com. Pl., Apr. 28, 2005) (citing *Ibn-Sadiika v. Riester*, 380 Pa. Super. 397, 403, 551 A.2d 1112, 1115 (1988); *Veneri v. Pappano*, 424 Pa. Super. 394, 397, 622 A.2d 977, 978-79 (1993)).

Pennsylvania law applies to this claim because Licastro at all relevant times was a lawyer licensed in Pennsylvania and providing legal services in Pennsylvania.

To start, the Amended Complaint clearly pleads the first element of a professional negligence claim, stating: "Licastro was employed by and served the Company as in-house General Counsel on a *de facto* and/or formal basis, and had a duty to provide legal services to the Company consistent with the applicable standard of care."  (Amend. Comp. ¶ 255).  *See* Exh. "A" for copies of e-mails from Licastro wherein he refers to himself as in-house General Counsel of World Health.

Second, the Trustee affirmatively pled facts in the Amended Complaint supporting the second element of a professional negligence claim, namely "the failure of the attorney to exercise ordinary skill and knowledge".  *Mumford*, 2005 WL 3106535 at *72.  The Trustee also pled in the Amended Complaint that Licastro failed to provide

---

[10]    Further, the Amended Complaint sets forth in detail, payments made to Licastro that do not include payroll, within

30

oversight and failed to provide advice that would have prevented the Company from submitting SEC filings that included material misrepresentations. (Amend. Comp. ¶ 256). Moreover, the Trustee pled that Licastro "became aware or should have been aware of the malfeasance and misdealing and discrepancies in the Company's revenues; however," Licastro took no action "consistent with [his] fiduciary duties to remedy or ameliorate the discrepancies until after McDonald's resignation." (Amend. Comp. ¶ 151). Despite Licastro holding himself out as in-house General Counsel, he at no point issued any sort of appropriate advice or warning to directors and fellow officers of World Health that would be required of a professional exercising the requisite standard of care in his position. It is clear that <u>had</u> Licastro utilized the appropriate standard of care of an individual providing legal services to an entity, such corporate wrongdoing, including misrepresentations to the SEC,[11] lack of appropriate monitoring systems, and lack of appropriate financial controls, would not have occurred.

Finally, the Trustee affirmatively pled facts that supported the third element of a professional negligence claim, namely "that such negligence was the proximate cause of damage to the plaintiff." *Mumford*, 2005 WL 3106535 at *72. To establish the causation element in a professional negligence action, the plaintiff is not required to show that the defendant's negligence was the actual "but for" cause of the plaintiff's harm; rather, under the "increased-risk-of-harm" standard, the plaintiff must introduce sufficient evidence that the defendant's conduct increased the risk of the plaintiff's harm. *Winschel v. Jain*, 925 A.2d 782, 788 (Pa. Super. 2007). The Trustee states in the Amended Complaint that

---

one year of the Petition Date. *See* Amend. Comp. ¶231.

[11] *See* § 307 of the Sarbanes-Oxley Act of 2002, at 15 U.S.C.A. § 7245 and SEC Rule 205 at 17 C.F.R. Part 205, regarding a lawyer's obligation relating to a "noisy withdrawal" and to report material violations of

the Company has suffered damages as a result of Licastro's professional negligence. (Amend. Comp. ¶ 257).

Further, it is well established that attorneys owe their clients a fiduciary duty. *See Huber v. Taylor*, 469 F.3d 67, 81 (3d Cir. 2006). The foregoing sections of this brief describe in detail Licastro's breach of fiduciary duties.

Authoritative sources recognize that separate violations can be alleged against a lawyer for the fiduciary duty owed to a client, separate from a legal malpractice claim. Geoffrey Hazard, Jr. and W. William Hodes, *The Law of Lawyering*, § 4.7 (3d ed.). *See In re Gutfreund*, SEC Admin. Pro. File No. 3-7930, 8 Law. Man. Prof. Conduct 414 (1992) (SEC determined that in-house general counsel of securities firm had a duty to conduct reasonable monitoring of activities of corporate officials to ascertain their compliance with legal requirements).

Other courts have held that an alternative basis for a legal malpractice claim is to allege a breach of the fiduciary duty of loyalty. *See Resolution Trust Corp. v. Holland & Knight*, 832 F.Supp. 1528, 1531 (S.D. Fla. 1993) (cited in Ronald Mallen and Jeffrey Smith, *Legal Malpractice*, § 28:29 n.1 (2007)). Previous sections of this brief addressed the fiduciary duty violations of Licastro. *See generally*, Hillary A. Sale, *Monitoring Caremark's Good Faith*, 32 Del. J. Corp. Law 719 (2007).

Courts have found lawyers liable for aiding and abetting management of a company in violating state law by either participating in or failing to prevent misconduct. *See Resolution Trust Co. v. Farmer*, 823 F.Supp. 302, 305 (E.D. Pa. 1993). The *Farmer* court ruled that:

---

securities laws. *See also "Corporate Counsel Have Heightened Duties to Respond to Insider Wrongdoing*, 22 Law. Man. Prof. Conduct 145 (2006) (lawyers cannot adopt a "see no evil, hear no evil" attitude).

WM1A 214767v5 12/26/07

> Advice or encouragement to act operates as moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon liability of the advisor as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act. This is true both when the act done is an intended trespass . . . and when it is merely a negligent act . . .. The rule applies whether or not the other knows his act is tortious.

Expert commentators have explained that lawyers for a corporation, like officers of the corporation, are co-agents with corporate officials, and the lawyer's "duty of care to the corporation may sometimes entail measures that prevent injury to the corporation resulting from the conduct of the other agents". Section 4.8, *The Law of Lawyering*, *supra,* (citing *BCCI Holdings (Luxemburg) S.A. v. Clifford,* 964 F. Supp. 468 (D.D.C. 1997)) (rejecting motion to dismiss by outside lawyers who were charged with not doing enough to stop the misconduct of a bank's mismanagement that led to its downfall); *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994), *remanded for trial*, 61 F.3d 17 (9th Cir. 1995) (same). The foregoing authorities should apply with greater force to an *in-house lawyer* such as Licastro in order to impose liability in this case at bar.[12]  *See, generally, In re American Continental Corp./Lincoln Savings and Loan Securities Litig.*, 794 F. Supp. 1424, 1453 (D. Ariz. 1992) (lawyer has duty to act in the best interests of the corporation); and George C. Harris, *Taking The Entity Theory Seriously: Lawyer Liability for Failure to Prevent Harm to Organizational Clients Through Disclosure of Constituent Wrongdoing*, 11 Geo. J. Leg. Ethics 597, 638 (2007) (lawyer's duty of

loyalty to the corporation includes prevention of wrongdoing by others and disclosure of wrongdoing once found).[13]

Moreover, the Trustee is aware of Pennsylvania Rule of Civil Procedure 1042.3(a) and intends to satisfy the requirement of a Certificate of Merit within the requisite deadline of 60 days of the filing of the Amended Complaint, or by January 14, 2008.  For these reasons, Count XIII of the Amended Complaint should not be dismissed.

---

[12] Licastro's attempts to avoid his role as a lawyer for the Company are belied by the undisputed fact that he secured a malpractice insurance policy to protect him from claims made against him by the Company for legal malpractice as the Company's sole in-house lawyer.

[13] Licastro admits that his challenge to the Trustee's Equitable Subordination Claim at Count XII of the Amended Complaint is dependent upon his success in convincing this Court that he did not engage in *any* inequitable conduct based upon the claims asserted against him. Because the Trustee has his adequately plead numerous instances of inequitable conduct by Licastro in the Amended Complaint, his motion to dismiss the Equitable Subordination claim must necessarily be denied.

## **CONCLUSION**

In light of the foregoing reasoning and authorities, the Trustee respectfully submits that the Defendant's Motion to Dismiss should be denied.


FOX ROTHSCHILD LLP

By:____/s/ Carl D. Neff_____
    Francis G.X. Pileggi (Bar No. 2624)
    Sheldon K. Rennie (Bar No. 3772)
    Carl D. Neff (Bar No. 4895)
    919 N. Market Street, Suite 1300
    Wilmington, DE  19801
    Tel: (302) 655-3667/Fax: (302) 656-8920

    -and-

    Edward J. DiDonato, Esquire
    2000 Market Street, Tenth Floor
    Philadelphia, PA  19103
    Tel: (215) 299-2000/Fax: (215) 299-2150

    *Attorneys for Trustee, George L. Miller*


Dated: December 26, 2007